Filed 11/29/22 P. v. Gaytan CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

THE PEOPLE,

Plaintiff and Respondent,

v.

JESUS AARON GAYTAN, JR.,

Defendant and Appellant.

F079141

(Super. Ct. No. VCF120624B)

**OPINION**

-ooOoo-

**THE COURT**\*

APPEAL from an order of the Superior Court of Tulare County. Kathryn T. Montejano, Judge.

Michelle May Peterson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Eric Christoffersen, Amanda D. Cary and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*	Before Levy, Acting P. J., Poochigian, J. and Snauffer, J.

**INTRODUCTION**

In 2005, a jury convicted petitioner Jesus Aaron Gaytan, Jr., of the first degree murder of S.R. (Pen. Code, § 187, subd. (a), count 1).[1]  The jury also found true the special circumstances that petitioner committed the murder while engaged in the commission or attempted commission of robbery, carjacking, and burglary (§ 190.2, subd. (a)(17)).[2]  As to count 1, the trial court sentenced petitioner to a term of life without the possibility of parole.  (*People v. Gaytan* (May 3, 2007, F048147) [nonpub. opn.].)

In 2019, petitioner filed a petition for resentencing on his murder conviction pursuant to section 1172.6 (former § 1170.95).[3]  The trial court, without appointing counsel or providing an opportunity for further briefing by either party, denied the petition because petitioner was "a major participant in the underlying designated felony and acted with reckless indifference to human life," a disqualifying factor pursuant to section 1172.6.

On appeal, petitioner contends he has established a prima facie case for entitlement of relief because the special circumstance findings cannot establish his ineligibility for resentencing as a matter of law because his conviction predates our Supreme Court's decisions in *Banks*/*Clark*,[4] which clarified the meaning of "major participant" and "reckless indifference to human life."

While petitioner's appeal was pending, our Supreme Court held a pre-*Banks*/*Clark* special circumstance finding does not render a section 1172.6 petitioner ineligible for

---

[1]    All further statutory references are to the Penal Code, unless otherwise specified.

[2]    Petitioner was convicted of additional offenses and enhancements, as described below.

[3]    Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.)  We will refer to the current section 1172.6 in this opinion.

[4]    *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*); *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).

2.

relief as a matter of law. (*People v. Strong* (2022) 13 Cal.5th 698 (*Strong*).) Therefore, based on *Strong*, we must vacate the trial court's order and remand the matter for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

We include a brief summary of the underlying facts taken from the petitioner's direct appeal excerpted from *People v. Gaytan* (May 3, 2007, F048147) [nonpub. opn.]).[5]

> "Andrew and Jason P[.] were visiting their brother, Joshua, at his Visalia apartment on December 24, 2003. At 5:30 a.m. the following morning, Andrew was asleep in the living room when he awakened by the honking alarm of a vehicle. He looked outside and saw two people in his parked truck and a third person circling around the back of the truck. As Andrew went out the front door of the apartment, he heard the truck start and saw the third person hop into the passenger seat of the truck. Andrew ran for the driver's side, opened the door, yelled, 'You like my truck, mother f[**]ker,' and punched the driver.
>
> "Jason, who was also wakened from sleep by the truck's alarm, also ran outside. Jason was almost positive there were three people in Andrew's truck. Jason ran to the passenger side of the truck, opened the door, and pulled the man seated there out of the truck. Jason tried to pull the man in the middle of the seat out of the truck, but 'somehow went to the ground.' He then wrestled with the man he had first thrown out of the truck.
>
> "At one point, someone from the middle of the truck pulled out a semiautomatic handgun and pointed it at Andrew's face. Andrew grabbed the barrel of the gun, pushed it toward the windshield, and 'proceeded to

---

[5] We provide these facts because they were cited by both parties in their opening briefs. However, we do not rely on these facts in resolving the issues presented in this appeal. (See § 1172.6, subd. (d)(3).)

This court previously granted, in part, petitioner's request for judicial notice, and took judicial notice of our nonpublished opinion in petitioner's direct appeal. (*Gaytan*, *supra*, F048147.) We construed the remainder of the request for judicial notice as a request to augment the record with the reporter's transcripts of the trial proceedings and subsequently granted that request over the People's objection. We also granted two additional requests by petitioner to augment the record.

We now also grant petitioner 's January 19, 2021, unopposed request for judicial notice.

beat that guy up.' The carjackers then got out of the truck. Andrew could not recall whether they exited from the passenger side, or whether one person exited on the driver's side.

"Meanwhile, out of the corner of his eye, Jason saw someone at the back of the truck. The brothers heard a gunshot or 'pop,' and Jason saw a muzzle flash and tasted gunpowder. The passenger Jason had been struggling with fell to the ground.

"Andrew and Jason hopped into the truck. The third brother, Joshua, saw two people run away and saw his brothers in the cab of the truck. Andrew also saw two people run away. Andrew backed up the truck, but the driver's door was open and he tore the door off on a carport post. Joshua saw a car leaving the apartment parking lot. The brothers then noticed a body on the ground on the passenger side of the truck. They called the police.

"Officer Mike Verissimo arrived at the scene and found a damaged truck in the middle of the parking lot and a dead body near the passenger door. Officer Verissimo discovered a nine-millimeter shell casing five feet from the body. The victim was identified as [S.R.].

"Robert Douglas, a police identification technician, arrived to collect evidence. He discovered four 9-millimeter cartridges, consistent with the collected shell casing, inside [S.R.]'s pocket.

"During a subsequent autopsy, a nine-millimeter bullet fragment was removed from [S.R.]'s body.

"Juanita Marquez and [petitioner] were arrested separately later that day after police received tips from [S.R.]'s family. [Petitioner] was carrying a .38-caliber revolver when he was arrested. Mejia was arrested the following day. Mejia provided the police with detailed information on the location of a nine-millimeter Glock handgun and two magazines.

"Juanita Marquez was originally charged with murder, but agreed to testify for the state in exchange for pleading guilty to manslaughter. Marquez testified that early in the morning of December 25, she, [petitioner], Mejia, and [S.R.] were at their friend Mario's house. Everyone except [S.R.] was smoking methamphetamine; [S.R.] was drinking shots of alcohol. [S.R.] was bored and suggested that they do a 'jale,' which meant to 'jack a car or do a driveby or something like that.' Mejia suggested carjacking, and [petitioner] agreed.

4.

"All three men armed themselves, and they headed to Tulare but they could not locate any car or truck that Mejia wanted. They then decided to go to Visalia. They entered an apartment complex and chose a truck that Mejia wanted. Once the vehicle was chosen, they concluded that Mejia was going to steal the vehicle and [S.R.] was going to be the lookout because [petitioner] was too tired to participate in the carjacking. [Petitioner] instead was going to be the driver for the current car that they were in. Mejia and [S.R.] then left to do the carjacking. Later, Marquez heard the truck that they were planning to steal start up so she told [petitioner] to start the car. While they were waiting for the truck to move, she heard a gun shot [*sic*]. [Petitioner] began driving the car towards the direction of the truck, when they observed Mejia running towards them. They asked Mejia about [S.R.], and Mejia responded that he did not know but that they needed to depart the apartment complex soon. Marquez, [petitioner] and Mejia left without [S.R.].

"Sergeant Steve Puder arrested [petitioner] in Tulare at 4:00 p.m. on December 25, 2003 for unlawful possession of a loaded handgun in a vehicle. Police also suspected [petitioner] in [S.R.]'s homicide. Police transported [petitioner] to the Visalia Police Department and detained him. At the police station, Puder interviewed [petitioner]. [Petitioner] eventually provided a statement that was consistent with Marquez's testimony. Specifically, [petitioner] stated that he participated in an attempted carjacking, that he was armed, that he stayed in the car with Marquez while Mejia and [S.R.] went to steal the truck, and that he heard noises and yelling and a single shot.

"Before trial, [petitioner] moved to suppress the admission of his statements to Sergeant Puder. The trial court conducted a hearing to determine whether [petitioner]'s statements were admissible. During the hearing, Sergeant Puder testified that, prior to the interview, he advised [petitioner] of his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*). Sergeant Puder testified that [petitioner] appeared to understand the advisements, and that [petitioner] waived his *Miranda* rights and agreed to speak. Sergeant Puder did not tape record that portion of the interview because [petitioner] seemed nervous and Sergeant Puder wanted to get the most truthful statement he could before taping.

"Sergeant Puder also testified that [petitioner] mentioned a lawyer 'a few times,' saying 'I'd like to call my parents so they can get me an attorney.' Sergeant Puder testified that he tried to clarify whether [petitioner] wanted a lawyer immediately so he specifically asked [petitioner], '[D]o you want to talk to me?' and [petitioner] specifically

5.

replied, '[Y]es.' Although Sergeant Puder had advised [petitioner] of his *Miranda* rights and reminded[petitioner] of them, he decided to read them again to [petitioner]. Sergeant Puder gave the warnings from memory.

"At the hearing, [petitioner] testified that he did not remember whether Sergeant Puder advised him of his constitutional rights before giving a statement. [Petitioner] agreed that on more than one occasion he said to Puder: 'That I wanted to contact my parents so, um, I can get a lawyer, so they could pay for an attorney.' He also claimed that drug and alcohol use for a week left him feeling 'out of it' on Christmas morning.

"In opposition, Sergeant Puder testified that [petitioner] did not appear to be 'out of it' during the interview given that [petitioner] was able to provide the names and addresses of his family members.

"The trial court did not find that [petitioner] was under the influence during the interview. The court denied [petitioner]'s motion to suppress because it concluded that [petitioner] did not unequivocally ask for an attorney after waiving his *Miranda* rights." (*People v. Gaytan*, *supra*, F048147.)

On January 4, 2005, the Tulare County District Attorney filed a first amended information charging petitioner with the first degree murder of S.R. (§ 187, subd. (a), count 1) with the special circumstances that the murder was committed during the commission or attempted commission of robbery, carjacking, and burglary (§ 190.2, subd. (a)(17)), along with a firearm enhancement (§ 12022, subd. (a)(1)); attempted carjacking (§§ 215, 664, count 2), along with a firearm enhancement (§ 12022, subd. (a)(1)); and possession of a firearm by a felon (former § 12021, subd. (a)(1), count 3). All three counts alleged that petitioner had suffered a prior strike conviction (§§ 667, subds. (b)−(i), 1170.12, subds. (a)−(d)).

On April 20, 2005, a jury convicted petitioner of first degree murder (§ 187, subd. (a), count 1) and attempted carjacking (§§ 215, 664, count 2) and found true all the special circumstance allegations and firearm enhancements as to those counts.[6] On

---

[6]    On April 4, 2005, petitioner pled nolo contendere to count 3 (§ 12021, subd. (a)(1)) and admitted the prior strike allegation (§§ 667, subds. (b)−(i), 1170.12,

May 18, 2005, the trial court sentenced petitioner on count 1 to a term of life without the possibility of parole.[7]  As to count 2, the trial court stated, "[T]he court is not going to impose a sentence.  It's stayed pursuant to 654[.]"  As to count 3, the trial court sentenced petitioner to the middle term of two years to run concurrent with count 1.  On direct appeal, this court affirmed the judgment.  (*Gaytan*, *supra*, F048147.)

On January 30, 2019, petitioner, in propria persona, filed a petition for resentencing on his murder conviction pursuant to section 1172.6.[8]  In the form petition, petitioner stated a complaint, information, or indictment was filed against him that allowed him to be prosecuted under a theory of felony murder or murder under the natural and probable consequences doctrine; at trial he was convicted of first or second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine; and he could not now be convicted of first or second degree murder because of changes to sections 188 and 189, effective January 1, 2019.  Petitioner also requested the trial court appoint counsel for him during the resentencing process; he stated he was convicted of first degree murder and could not now be convicted because of changes to section 189, effective January 1, 2019, because he was not the actual killer; he did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree; petitioner was not a major participant in the felony *or* he did not act with reckless

subds. (a)−(d)).  (*Gaytan*, *supra*, F048147.)  At the initial sentencing hearing, the court neglected to impose sentence on count 3.  At a subsequent sentencing hearing as to count 3 only, the trial court dismissed the strike allegation (§§ 667, subds. (b)−(i), 1170.12, subds. (a)−(d)).

[7]    In a separate case (case No. 113444b-03), petitioner was sentenced to the middle term of two years for a violation of section 594, subdivision (a), plus an additional three-year term for a gang enhancement (§ 186.22, subd. (b)(1)), for a total of five years.

[8]    On the same date, petitioner also filed a petition for writ of habeas corpus, arguing there was insufficient evidence to support the special circumstance findings under *Banks* and *Clark*.  (*Banks*, *supra*, 61 Cal.4th at p. 803; *Clark*, *supra*, 63 Cal.4th at p. 611.)

indifference to human life during the course of the crime or felony; and the victim of the murder was not a peace officer in the performance of his or her duties.

On March 8, 2019, the trial court, without appointing counsel or receiving further briefing by either party, simultaneously denied the resentencing petition and petitioner's petition for writ of habeas corpus.[9] As to the resentencing petition, the trial court stated:

> "The case was appealed to the Fifth Appellate District of California in case F048147. The opinion in that case stated on page 11: '[Petitioner] was a major participant in the attempted carjacking and had a mental state at least as culpable as reckless indifference to human life. [Petitioner] agreed to the carjacking, was part of the group that canvassed cars and trucks to carjack, and agreed to drive the car that transported the group pending the carjacking. [Petitioner] acted with reckless indifference to human life by carrying a loaded firearm during the carjack attempt, and was in close proximity to the attempted carjacking. Moreover, the jury was instructed that it could find the special circumstances true if it found that [petitioner] acted with intent to kill or reckless indifference to human life in aiding and abetting the commission of the crimes. The subsequent jury findings that the special circumstances were true necessarily included a finding that [petitioner] acted with intent to kill, or more likely in the circumstances of this case, acted with the less culpable mental state of reckless indifference to human life.'

> "The [section 1172.6] petition is denied for failure to state a prima facie case for relief. [Petitioner's] conviction was the result of felony murder, although the [petitioner] was a major participant in the underlying designated felony and acted with reckless indifference to human life. [Petitioner] does not fall within the provisions of Penal Code [section 1172.6]."

---

[9]     On March 26, 2019, after the trial court had already issued its order denying the petition, the People filed a motion to dismiss the petition based on the unconstitutionality of Senate Bill No. 1437 (2017−2018 Reg. Sess.) (Senate Bill 1437) and the petitioner's ineligibility for relief based on him being a major participant in the underlying felony who acted with reckless indifference to human life. The trial court never addressed the People's argument regarding the constitutionality of Senate Bill 1437.

As to the habeas petition, the trial court stated, "there was sufficient evidence to justify the three special circumstances." A timely appeal from the denial of the petition for resentencing followed.

During the pendency of this appeal, petitioner submitted a motion on June 6, 2022, asking this court to continue oral argument until our Supreme Court issued its opinion in *Strong* and to allow supplemental briefing on the effect of *Strong* 15 days after the issuance of the opinion. On June 16, 2022, we filed an amended order allowing for oral argument to be continued and for supplemental briefing to be filed 20 days after *Strong* became final. After *Strong* was decided, we issued an order that it was "the intention of the court to reverse and remand this matter [to the trial court] with directions to issue an order to show cause," but provided either party 15 days to serve and file an objection. On September 28, 2022, the People filed a letter brief in nonopposition to this court's intention to reverse and remand this case. Accordingly, in light of *Strong* and the People's nonopposition, the trial court's order denying the section 1172.6 petition is reversed and the matter remanded for further proceedings.

## DISCUSSION

### I.  Applicable Law

Effective January 1, 2019, the Legislature passed Senate Bill 1437 " 'to amend[ ] the felony murder rule and the natural and probable consequences doctrine … to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).)" (*People v. Gentile* (2020) 10 Cal.5th 830, 842 (*Gentile*).) Senate Bill 1437 accomplished this task by adding three separate provisions to the Penal Code. First, to amend the natural and probable consequences doctrine, Senate Bill 1437 added section 188, subdivision (a)(3), which requires a principal to act with malice aforethought before he or she may be

9.

convicted of murder.  (§ 188, subd. (a)(3); accord, *Gentile*, at pp. 842−843.)  Second, to amend the felony-murder rule, Senate Bill 1437 added section 189, subdivision (e):

> " 'A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven:  [¶]  (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶]  (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.' "[10]  (§ 189, subd. (e); accord, *Gentile*, at p. 842.)

Finally, Senate Bill 1437 added section 1172.6 (former § 1170.95) to provide a procedure for those convicted of a qualifying offense "to seek relief under the two ameliorative provisions above." (*Gentile*, at p. 843.)  This procedure is available to persons convicted of "felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter."  (§ 1172.6, subd. (a).)

"Section [1172.6] lays out a process" for a person convicted of one of the aforementioned offenses "to seek vacatur of his or her conviction and resentencing." (*Gentile*, *supra*, 10 Cal.5th at p. 853.)  First, an offender must file a petition in the sentencing court averring that:

> " '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine[;]

---

**10**    Additionally, section 189 was amended to allow for felony-murder liability where the victim is a peace officer. (§ 189, subd. (f); accord, *People v. Daniel* (2020) 57 Cal.App.5th 666, 672.)

" '(2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder[; and]

" '(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019.' " (§ 1172.6, subd. (a)(1)−(3); see also § 1172.6, subd. (b)(1)(A); accord, *People v. Lewis* (2021) 11 Cal.5th 952, 959−960 (*Lewis*).)

Additionally, the petition shall state "[w]hether the petitioner requests the appointment of counsel." (§ 1172.6, subd. (b)(1)(C).)

If a petition fails to contain the required information and the information cannot be "readily ascertained" by the court, the petition may be denied without prejudice to the filing of another petition. (§ 1172.6, subd. (b)(2).) Otherwise, counsel must be appointed, if requested. (§ 1172.6, subd. (b)(3).) The prosecutor must file a response and the petitioner may file a reply. The trial court must then hold a hearing to determine if the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1172.6, subd. (c); accord, *Lewis*, *supra*, 11 Cal.5th at pp. 961−963, 967.) In making this determination, the court may rely on the record of conviction, which includes, but is not limited to, jury instructions and verdict forms. (*Lewis*, at pp. 970−971, 972.) However, the prima facie inquiry is limited and, at this stage of the proceedings, the court "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id.* at pp. 971−972.) "If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1172.6, subd. (c).)

On the other hand, if the court determines the petitioner has met his or her prima facie burden, "the trial court must issue an order to show cause and hold a hearing to determine whether to vacate the murder[, attempted murder, or manslaughter] conviction and to resentence the petitioner on any remaining counts." (*Gentile*, *supra*, 10 Cal.5th at

11.

p. 853; accord, § 1172.6, subds. (c), (d)(1).) At the hearing, the prosecution must "prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1172.6, subd. (d)(3).) The prosecutor and the petitioner may offer new or additional evidence to meet their respective burdens. The admission of evidence at the hearing is governed by the Evidence Code. However, the court also "may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed," as well as the "procedural history of the case recited in any prior appellate opinion." (§ 1172.6, subd. (d)(3).) Hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of section 872 is inadmissible at the evidentiary hearing, unless made admissible by another exception to the hearsay rule. (§ 1172.6, subd. (d)(3).)

## II. Analysis

Petitioner contends the special circumstance findings cannot establish his ineligibility for resentencing because *Banks/Clark* substantively changed the legal meaning of both "major participant" and "reckless indifference to human life." Based on our Supreme Court's holding in *Strong*, we agree.[11]

Prior to *Strong*, the Courts of Appeal were split on the question of whether a special circumstance finding entered prior to *Banks* and *Clark* renders a petitioner ineligible for section 1172.6 resentencing relief as a matter of law. Our Supreme Court

---

[11]     Petitioner further contends: (1) the trial court erred by dismissing the petition without appointing counsel; (2) the doctrines of claim preclusion (res judicata), law of the case, and issue preclusion (collateral estoppel) do not bar resentencing relief; and (3) he should not be required to first file a habeas corpus petition before challenging a special circumstance finding. As to petitioner's third argument, we agree. Our Supreme Court stated, "there is nothing in section 1172.6, to indicate that such arguments may be made only after a petitioner had the prior special circumstance findings set aside in a separate habeas corpus or other proceeding." (*Strong*, *supra*, 13 Cal.5th at p. 714.) However, because we conclude petitioner established a prima facie case for relief under section 1172.6, we do not address these remaining arguments in this opinion.

12.

recently resolved this split and made clear that when, as here, a petitioner's case "was tried before both *Banks* and *Clark*, the special circumstance findings do not preclude him from making out a prima facie case for resentencing under section 1172.6." (*Strong*, *supra*, 13 Cal.5th at p. 721.) "This is true even if the trial evidence would have been sufficient to support the findings under *Banks* and *Clark*." (*Id*. at p. 710.) The *Strong* court noted the *Banks* and *Clark* cases "both substantially clarified the law governing findings under … section 190.2, subdivision (d)." (*Id*. at p. 706.) Further, the court articulated a pre-*Banks* and *Clark* special circumstance finding does not negate the showing a petitioner could not presently be convicted of murder or attempted murder "because the finding alone does not establish that the petitioner is in a class of defendants who would still be viewed as liable for murder under the current understanding of the major participant and reckless indifference requirements." (*Strong*, at p. 718.)

Because of the differences between the pre-and post-*Banks* and *Clark* special circumstance requirements, the Supreme Court stated the changes may "have altered what evidence defense counsel would have sought to introduce[,] … might have fundamentally altered trial strategies" (*Strong*, *supra*, 13 Cal.5th at p. 719), and may have affected what jury instructions were requested or given (*id*. at p. 720). "An after-the-fact court review of a pre-*Banks* and *Clark* record does not account for all these differences.… And as the Legislature has made explicit in a recent amendment to the predecessor to section 1172.6, a court determination that substantial evidence supports a homicide conviction is not a basis for denying resentencing after an evidentiary hearing. [Citation.] Nor, then, is it a basis for denying a petitioner the opportunity to have an evidentiary hearing in the first place." (*Id*. at p. 720.) "For petitioners with pre-*Banks/Clark* findings, no judge or jury has ever found the currently required degree of culpability for a first time. Allowing reexamination of the issue under these circumstances does not permit a 'second bite of the apple' because the changes in the law mean there is now 'a different apple.' " (*Id*. at p. 718.) Thus, neither "the jury's

13.

pre-*Banks* and *Clark* findings nor a court's later sufficiency of the evidence review amounts to the determination section 1172.6 requires, and neither set of findings supplies a basis to reject an otherwise adequate prima facie showing and deny issuance of an order to show cause." (*Id.* at p. 720.)

Here, the jury found true the section 190.2, subdivision (a)(17) special circumstances approximately 10 years before *Banks* and *Clark* were decided. Pursuant to *Strong*, these findings do not preclude petitioner from stating a prima facie case for relief. (*Strong*, *supra*, 13 Cal.5th at p. 721.) Moreover, a petitioner's prima facie case is not barred even if the evidence is sufficient to support the special circumstance findings post-*Banks* and *Clark*. (*Id.* at p. 710; see *Lewis*, *supra*, 11 Cal.5th at p. 972 [In reviewing the record at the prima facie stage, "a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' "].)

Petitioner's section 1172.6 petition was facially sufficient and alleged the necessary facts necessary for relief under section 1172.6. Nothing in the record indicates petitioner is ineligible for relief as a matter of law, and thus, we accept the People's concession and remand the matter for the trial court to issue an order to show cause, and to the extent necessary, conduct an evidentiary hearing. (§ 1172.6, subds. (c), (d)(1) & (3).) We express no opinion on the ultimate resolution of the petition.

## DISPOSITION

The trial court's order denying petitioner's section 1172.6 petition is reversed. On remand, the trial court is directed to issue an order to show cause and, to the extent necessary, hold an evidentiary hearing pursuant to section 1172.6, subdivision (d).